JAMES J. CASTALDO *v.* ROSE D'ERAMO ET AL.

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN, and CORNELL, Js.

Argued May 12—decided June 23, 1953

*Sydney P. Simons,* with whom, on the brief, was *Henry Greenstein,* for the appellants (defendants).

*Samuel J. Tedesco,* for the appellee (plaintiff).

O'SULLIVAN, J. The plaintiff brought this action to recover the amount of a cash deposit alleged to have been given by him when making an offer to purchase a house and lot from the defendants. The theory behind the plaintiff's cause of action was that his offer had been rejected and that no valid contract had ever arisen. Each defendant filed a general denial. In addition thereto, the named defendant attached to her answer a counterclaim alleging that the plaintiff had entered into a written contract to purchase for $11,200 certain real estate owned by her and that he had breached his agreement, to her damage, by refusing to pay anything in excess of $400, his initial deposit.

The jury returned a verdict for the plaintiff on both the complaint and the counterclaim. The defendants have appealed. The assignments of error which they press deal with the court's denial of their motion to set the verdict aside, with the finding and with the charge.

The jury could reasonably have found the following facts: During October, 1948, the plaintiff decided to buy a house for himself and his family. He communicated with a real estate broker named Karmasin and arranged to meet him at a development in Bridgeport known as Roslyn Terrace. The land in the development was owned by the defendant Rose D'Eramo, and the houses in process of construction upon it were being built by her husband, the defendant Philip D'Eramo. The defendants, who were

working closely together in the building and selling of houses, had previously listed the lots in Roslyn Terrace for sale with Karmasin.

On the occasion of his first visit to the development, the plaintiff was shown and became interested in one of the lots upon which a cellar had been built. At the suggestion of Karmasin, he subsequently signed an instrument captioned "Real Estate Contract." At that time, no other signature was on the instrument. It recited that Rose D'Eramo agreed to execute and deliver a warranty deed of "Lot No. 20" for the price of $11,200, of which receipt of $400 was acknowledged. It further recited: "House to be similar to Brown House. . . . This contract is subject to Catherine Castaldo's approval after birth of their youngster."

When Karmasin brought the instrument to the defendants, Mrs. D'Eramo refused to sign it because of the two conditions just quoted. Another contract on a printed form, similar to the one used by the plaintiff, was then prepared for Mrs. D'Eramo. The two conditions to which she had objected were not inserted in this form. After Mrs. D'Eramo had signed the newly drafted instrument, she gave it to Karmasin, who then left with both defendants the $400 which the plaintiff had previously given him as a deposit. The defendants accepted it on the understanding that, if the plaintiff would not agree to the terms of Mrs. D'Eramo's counter proposal, the money would be returned to him. The plaintiff refused to execute the contract with the two conditions eliminated and, since then, he has unsuccessfully demanded his deposit. The $400 still remains in the possession of the defendants.

On the basis of the foregoing facts, the jury were warranted in returning their verdict against Mrs.

D'Eramo, since she was unlawfully withholding the deposit. The plaintiff had entered into no contract with her. The situation was one where the minds of the parties did not meet. The offer of the one, and the counter offer of the other, was rejected, or at least not accepted. Under such circumstances, the most elementary principles of the law of contracts govern. A contract between the parties did not arise. *Leigh* v. *Smith,* 138 Conn. 494, 496, 86 A.2d 567; *Lloyd & Elliott, Inc.* v. *Parke,* 112 Conn. 504, 506, 152 A. 825; *Finlay* v. *Swirsky,* 103 Conn. 624, 632, 131 A. 420; *Hartford & N. H. R. Co.* v. *Jackson,* 24 Conn. 514, 516; 1 Williston, Contracts (Rev. Ed.) § 64; 12 Am. Jur. 530, § 37.

The jury were likewise warranted in finding against the defendant Philip D'Eramo. Contrary to his claim, the case is not one involving the principle that an agent may not be held liable in those instances where, acting within the scope of his authority, he contracts with a third party for a known principal. *Whitlock's, Inc.* v. *Manley,* 123 Conn. 434, 437, 196 A. 149; *Sullivan* v. *Shailor,* 70 Conn. 733, 736, 40 A. 1054; Restatement, 2 Agency § 328; 2 Am. Jur. 247, § 315. As already pointed out, there was no contract between the plaintiff and any other person. The liability of the defendant Philip D'Eramo rests entirely on his wrongful refusal to surrender money to which the plaintiff is legally entitled.

A further claim advanced by Mrs. D'Eramo is that the verdict on the counterclaim should have been set aside because, she contends, the evidence "clearly and unmistakably demonstrates" that the plaintiff breached his agreement to purchase the property in question. It is obvious that a verdict for the plaintiff on the complaint would be utterly inconsistent with one for Mrs. D'Eramo on the counterclaim, since the

latter would necessarily rest, as alleged, upon the existence of a contract between the parties, while the former would rest upon its nonexistence. The evidence in the case on this matter was conflicting. It was the privilege of the jury to determine where credibility lay. *Sackett* v. *Carroll,* 80 Conn. 374, 377, 68 A. 442; *Barlow Bros. Co.* v. *Parsons,* 73 Conn. 696, 706, 49 A. 205. We may not substitute our judgment for theirs. *Lawrence* v. *Abrams,* 121 Conn. 480, 481, 185 A. 414. Nor is the case one, as the defendants maintain, where the "injustice of the verdict was so manifest that it was apparent that it was dictated by some improper influence . . . and not by a weighing of the evidence." *Roma* v. *Thames River Specialties Co.,* 90 Conn. 18, 21, 96 A. 169; *Levy* v. *Bromberg,* 108 Conn. 202, 204, 142 A. 836. There was no error in the court's denial of the motion to set the verdict aside.

The defendants assign error in the finding. They seek to add a number of paragraphs to the plaintiff's claims of proof. We observe again, as we have done so frequently in the past, that a finding in a case tried to the jury has a limited objective. The finding is merely a narrative of the facts claimed to have been proved on either side, made for the purpose of fairly presenting claimed errors in the charge or in rulings of the court. *Orico* v. *Williams,* 139 Conn. 714, 716, 97 A.2d 556. Ordinarily, and as illustrated by the situation in the case at bar, a litigant may not force into the claims of proof of his adversary factual matters which are objectionable to the latter and upon which he does not rely. A different situation prevails with respect to the additions which a party may seek to make to his own claims of proof. Such additions may be made to the finding if they are material and are supported by the evidence.

The plaintiff's claims of proof need not be recited, since they follow the statement of facts narrated in discussing the court's refusal to set the verdict aside. The vital part of the defendants' claims of proof may be summarized in this fashion: After Mrs. D'Eramo had refused to accept the plaintiff's original offer, Karmasin, in her presence, crossed out, on the instrument signed by the plaintiff, the words "This contract is subject to Catherine Castaldo's approval after birth of their youngster"; and he also substituted the words "the Padulla House on Roslyn Terrace" for the words "Brown House" in the other condition. He then left Mrs. D'Eramo's house and, upon returning shortly thereafter, informed her that the plaintiff had agreed to the changes. Thereupon, she signed the instrument which the plaintiff had executed and which had been altered by crossing out one condition and modifying the other. She also signed a duplicate copy at Karmasin's request and gave it to him in order to protect his right to a commission.

It is apparent from the claims of proof that the basic issue between the parties was whether the instrument which the plaintiff and Mrs. D'Eramo concededly signed was a valid contract. Because of this, there is little, if any, merit in the various assignments directed by the defendants against the court's charge. The test to be applied in determining whether there is error in a charge is that it must be correct in law, adapted to the issues and sufficient for the guidance of the jury. *Warner* v. *McLay,* 92 Conn. 427, 429, 103 A. 113; *Bogudski* v. *Backes,* 83 Conn. 208, 215, 76 A. 540. If it meets this test, it will ordinarily be sustained although it may not be exhaustive, perfect or technically accurate. *Chesebro* v. *Lockwood,* 88 Conn. 219, 224, 91 A. 188; *Baer* v.

*Baird Machine Co.,* 84 Conn. 269, 275, 79 A. 673; *Kelley* v. *Killourey*, 81 Conn. 320, 324, 70 A. 1031; Maltbie, Conn. App. Proc., § 48.

In the case at bar, the requests to charge were either covered in language which was ample to meet the test or they embodied matters which were not pertinent under the claims of proof. For example, Mrs. D'Eramo claimed to have proved that shortly after October 29, 1948, the plaintiff came to the premises and talked to the defendant Philip D'Eramo about the house; that about a week later the plaintiff ordered the installation of a picture window in the house; that thereafter, until early in January, he visited the site about once a week; that he talked to the painter in December about the color of paint he wanted used; and that in January he told Philip D'Eramo that Mrs. Castaldo was satisfied with the house. On the basis of the foregoing, the defendants requested the court to charge upon the subject of acceptance of Mrs. D'Eramo's counter proposal by conduct. Nowhere in the defendants' claims of proof is it stated that the counter proposal was communicated to the plaintiff. All that is claimed by the defendants is that Karmasin reported to them that the plaintiff had agreed to the modifications of the newly drafted contract. Without proof that the plaintiff knew of the counter proposal, no acts of his could be interpreted as an acceptance by conduct.

As noted above, there was one basic issue upon which the parties were in violent disagreement. This issue was stressed by the court in its charge. After commenting on the claim of the plaintiff that his written offer to buy the property had been refused by Mrs. D'Eramo and that her counter offer had likewise been rejected by him, the court proceeded to state the claim of Mrs. D'Eramo in this language:

"[O]n the other hand, Rose D'Eramo has alleged and offered evidence . . . that the plaintiff did conclude a written agreement with her for the purchase of property located on Roslyn Terrace . . . in accordance with the terms of the alleged agreement marked in evidence as Plaintiff's Exhibit B here. . . . She claims that she received from the plaintiff a $400 deposit in accordance with it; that she has been ready, able and willing to perform at all times required by her, and that the plaintiff has wrongfully refused to carry out his part of the contract. . . . The main issue in the case, therefore, is whether a contract was concluded by the parties here, or whether the negotiations fell short of becoming a binding contract." At no time did the defendants except to the accuracy of the foregoing statement. Their efforts to inject into the charge other matters inconsistent with the manner in which the case was tried would tend only to confusion on the jury's part. There was nothing in the charge which was harmfully erroneous.

There is no error.

In this opinion the other judges concurred.