STATE OF CONNECTICUT *v.* FREDERICK D. ROSE

STATE OF CONNECTICUT *v.* JAMES C. HARDY

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued October 14—decision released December 2, 1975

*John M. Byrne,* assistant public defender, with whom, on the brief, was *James D. Cosgrove,* chief public defender, for the appellant (defendant Frederick D. Rose).

*William M. Shaughnessey,* assistant public defender, with whom, on the brief, was *James D. Cosgrove,* chief public defender, for the appellant (defendant James C. Hardy).

*Bernard D. Gaffney,* assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

LOISELLE, J. The defendants were found guilty by a jury of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). They have appealed from the judgment rendered on the verdict and have presented twelve issues in their preliminary statement of appeal but have relied on three issues in their brief.

The defendants claim error in that part of the court's charge relating to its instructions on § 53a-134 (a) (2), particularly in submitting the issue of whether either one, or both, of the defendants was armed with a deadly weapon. The applicable portion of the statute at the time of the alleged incident read:[1] "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon or dangerous instrument." General Statutes § 53a-3 (6)

---

[1] Public Acts 1975, No. 75-411, § 1, effective October 1, 1975, amended this statute. Subsection (a) now provides: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

at the time of the alleged incident read in part: " '[D]eadly weapon' means any weapon from which a shot may be discharged, or a switchblade knife, gravity knife, billy, blackjack, bludgeon, or metal knuckles."[2]

The state offered evidence to prove the following: On August 17, 1972, at about 1:50 a.m., two males, whom the night clerk identified as the defendants Frederick D. Rose and James C. Hardy, entered a motel on the Berlin Turnpike. After a few moments, Hardy removed a small silver handgun from his waist, trained the gun on the night clerk and said: "If you scream, I'll kill you." He then placed his right arm around her waist, his left hand over her mouth and pushed her to a back office. In the meantime, Rose was looking for money in a desk. When he found none, he turned to the night clerk with a knife in his hand, and, from a distance of three to four feet, said: "It's not worth dying for," or "I'll kill you, where is the money?" The knife resembled a hunting or fishing knife, had an exposed blade of about four inches and, unlike a jackknife, had no movable blade. Rose discovered some rolls of coins and some currency which he put in his pocket along with money which he took from the night clerk's pocketbook. A total of $182 was taken. Before leaving, Hardy wrapped a long electric cord around the night clerk's arms and legs. Neither the handgun nor the knife was ever recovered.

Because it was not supported by the evidence, the court, at the outset, eliminated from the charge that portion of § 53a-134 (a) that defines first

---

[2] This definition was amended on October 1, 1973, by inserting the words "whether loaded or unloaded" after "means any weapon." Public Acts 1973, No. 73-639, § 1.

degree robbery as robbery accompanied by serious physical injury to a nonparticipant.[3] It continued by reading the remainder of the statute. It then gave the statutory definition of "deadly weapon," but added: "You should note that under the definition, a weapon from which a shot may be discharged, such as an ordinary revolver, rifle or shotgun, whether or not loaded at the time of this offense, is classified as a deadly weapon." Later in the charge the court said: "If you find that a robbery was committed by the defendant and in the course of the crime he or another participant in the crime was armed with a deadly weapon or dangerous instrument, you should return a verdict of 'guilty of robbery in the first degree.' . . . The only two things you have to consider is whether deadly weapon or dangerous instrument was used." In recapitulating its instructions on robbery in the first degree, the court stated: "First degree, you eliminate the serious physical injury, so you will consider that they must actually be armed with a deadly weapon or dangerous instrument. That's robbery in the first degree."

The defendants took exceptions to the court's submission of whether the defendants were armed with a deadly weapon and to the court's statement that a weapon from which a shot may be discharged may be a "deadly weapon," whether loaded or unloaded. The defendants claim that as no evidence was offered to prove whether the gun was one "from which a shot may be discharged"

[3] The court said: "The law provides that a person is guilty of robbery in the first degree when, in the course of the commission of the crime or the immediate flight therefrom, he or another participant in the crime . . . causes serious physical injury — and I guess we have heard no evidence of any serious physical injury, so you can eliminate that."

and as there was no evidence to prove the use of a switchblade knife, gravity knife, billy, blackjack, bludgeon, or metal knuckles, the court erred when it permitted the jury to consider whether a deadly weapon was used during the commission of the robbery. The state replies that even if there were no such evidence, the statute is in the disjunctive and the jury could have found that the knife used was a dangerous instrument.

It is the duty of the court to submit to the jury all controverted questions of fact relating to any element making up a crime; but if an element making up a crime, as laid down by a statute, is wholly unsupported by the evidence, it is error to submit it to the jury as if the evidence justified the determination of the presence of that element. See *Lewis* v. *Phoenix Mutual Life Ins. Co.*, 44 Conn. 72, 88. See also *Cackowski* v. *Jack A. Halprin, Inc.*, 132 Conn. 67, 71–72, 42 A.2d 838; *Kilday* v. *Voltz*, 117 Conn. 170, 173, 166 A. 754; 5 Wharton, Criminal Law & Procedure (Anderson Ed.) § 2090, p. 259.

In the present case, as the defendants claim, the state failed to offer evidence that either the gun or the knife was a deadly weapon under § 53a-3 (6). Consequently, the court erred by not eliminating from the jury's consideration the question whether the defendants used a deadly weapon during the robbery just as it had eliminated from the jury's consideration the question whether a nonparticipant was seriously injured during the robbery.

For an erroneous portion of a charge to be reversible error, the court must consider the whole charge and it must be determined, in appeals not involving a constitutional question, if it is reason-

ably probable that the jury were misled; *State* v. *Ralls,* 167 Conn. 408, 422, 356 A.2d 147; *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288; *Penna* v. *Esposito,* 154 Conn. 212, 215, 224 A.2d 536; *Allard* v. *Hartford,* 151 Conn. 284, 292, 197 A.2d 69; and, in appeals involving a constitutional question, if it is reasonably possible that the jury were misled. *State* v. *Annunziato,* 169 Conn. 517, 532 and n.7, 363 A.2d 1011; see also *Gilbert* v. *California,* 388 U.S. 263, 268, 87 S. Ct. 1951, 18 L. Ed. 2d 1178; *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241.

The charge was a distinct intimation to the jury that they were at liberty to find that a deadly weapon was used in the robbery. That portion of the charge excluding the element of serious physical injury may have implied that there was evidence to prove the use of a deadly weapon. More importantly, the remarks accompanying the defendants' displays of the gun and the knife augment the probability that the verdict of robbery in the first degree was based on the use of a deadly weapon. Given that decision, there was no need for the jury to determine whether the knife held by Rose was a dangerous instrument.

It is true that the evidence presented would support a verdict based on the use of a dangerous instrument, but the evidence was not such that the jury, as a matter of law, were compelled to find that the presence of a knife under the circumstances there present rendered the defendants armed with a dangerous instrument as defined by § 53a-3 (7). "[T]he charge must be considered from the standpoint of its effect on the jury in

guiding them to a proper verdict." *State* v. *Bell,* 153 Conn. 540, 544, 219 A.2d 218. The issue, then, is not whether the verdict is supported by the evidence; rather, it is whether the jury were misled by the charge. Whichever test is used, the latter issue must be answered in the affirmative, and therefore the defects in the charge constitute reversible error.

The other issues briefed by the defendants, because of the necessity of a new trial, do not require discussion.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.