STATE OF CONNECTICUT *v.* JOEL SAWICKI

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued June 15—decision released August 9, 1977

*W. Paul Flynn,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John J. Kelly,* assistant state's attorney, for the appellee (state).

HOUSE, C. J. On a trial to a jury, the defendant was found guilty on a one-count information charging him with first degree assault in violation of § 53a-59 (a) (1) of the General Statutes. He was sentenced to not less than seven nor more than fourteen years' imprisonment in the Connecticut correctional institution. He took the present appeal from the judgment, pressing as claims of error that the state had abandoned its claim of "assault with the feet," that the record does not support a conviction of first degree assault, and that there was error in the charge to the jury.

The trial arose out of an incident that occurred one evening in October, 1973. There was evidence from which the jury could have found the following facts: On October 7, 1973, Peter Pepe was the proprietor of Pepe's Market at 61 Kimberly Avenue in New Haven. At approximately 9 p.m. on that date, he had closed the market for the night and was in the building with a floor washer named Ike Hogan and another man named Jimmy Compone when the defendant came to the door of the store and asked for milk. Pepe told the defendant the store was closed and the defendant started banging on the window, yelling threats and obscenities.

A few minutes later, Pepe heard a noise outside the building in the alley next to the store. He went outside and saw the defendant standing next to the driver's door of Pepe's car. Pepe backed away when he heard the defendant say that he was going

to break every window in Pepe's car. He saw the defendant pick up a metal milk crate and raise it over his head. Pepe remembered nothing from the moment he saw the defendant with the raised milk crate until he awoke later at Yale-New Haven Hospital, where he had been taken after a brutal beating. Pepe remained in the hospital for eleven days.

The state did not learn of an eyewitness to the beating until the trial began. It then discovered that Isaiah Hogan, Jr., the son of the floor washer at Pepe's Market, on the night in question, was seated in a car outside the building where he observed the defendant's assault on Pepe. Hogan described how he had seen the defendant come to Pepe's Market and try to purchase something, only to be refused by Pepe. He saw the defendant go in the back and get a milk crate, with which he tried to break the windshield of Pepe's car. Hogan saw Pepe come out and exchange words with the defendant and he saw the defendant beat Pepe. He described how the defendant hit Pepe twice with his fist in the face. After Pepe fell, Hogan saw the defendant kick him twice in the face and twice in the back. The defendant was found guilty of assault in the first degree.

On appeal, the defendant first asserts that the state "abandoned the claim of first degree assault by the use of the shod foot." In brief, the defendant contends that when the trial began the state was unaware of Isaiah Hogan, Jr.'s testimony and, therefore, did not intend to claim as an instrumentality "the shod foot," and that the state should have been "estopped" from changing its position on which the defendant's counsel had relied in preparing a defense.

We find that this claim of error is without merit. The information dated October 11, 1973, charged the defendant with first degree assault for an attack in which he caused serious physical injury to Pepe "by means of a dangerous instrument, to wit: a metal milk case and/or his feet." Though he later claimed no memory of the details of the attack, Pepe had on the day after the assault told Detective Leonard F. Pastore of the New Haven police department, and Pastore related in an affidavit in support of an application for a bench warrant for the arrest of the defendant, that "the white male had hit him with a metal milk container and when he fell to the ground the white male began to stomp on him with his feet." The information was read to the defendant when he was put to plea and it and the affidavit were available to the defendant and his counsel.

At the beginning of the trial, the state proceeded on the basis of circumstantial evidence since there were then no known witnesses who would testify to the assault. Under the circumstances, the assistant state's attorney who was prosecuting the case indicated to defense counsel that he could not prove that the injuries to Pepe were caused by the feet of the defendant and he was, "in effect," abandoning this claim.

Thereafter, during the course of trial and before the close of the state's case-in-chief, the assistant state's attorney indicated to the court that he had been able to locate and interview a person who claimed to have observed the defendant's assault on Pepe and that this witness would testify that Pepe's injuries resulted from his being kicked and stomped by the defendant. The state requested that it be allowed to present the witness.

The defendant objected to the use of the witness, claiming that comments by the state had constituted "judicial admissions" that the claim of an injury by means of the shod foot was being abandoned and that he would be prejudiced by the admission of the testimony. Initially, the defendant's claim of prejudice was based solely on the claim that, once abandoned, a part of the information could not be resurrected.[1] The court did not rule immediately on the state's request and, after an intervening weekend, the defendant further claimed that there was actual prejudice because his questioning during the voir dire examination had been limited to the use of the metal crate.

The trial court, however, found that there was no prejudice because on voir dire counsel had been given great latitude and there is no requirement that all elements of evidence need be considered in questioning prospective jurors. The court found that the state had acted in good faith and allowed the evidence to come in, at the same time offering both sides the opportunity to examine further all witnesses who had already testified. It informed counsel that it would require those witnesses to be brought back for that purpose. It also offered to continue the case "for a day or two days or such reasonable time as defense counsel feels he might need" in connection with the new witness and the state's new line of inquiry. Significantly, the defendant did not except to the court's ruling, he did not call any of the witnesses who had already testified and he did not accept the court's offer of a continuance.

---

[1] "The Court: You are not claiming any prejudice but once they abandoned some part of the information, they can no longer resurrect it? Is that what you are claiming?

Counsel: That is correct, sir."

Section 526 of the Practice Book, which governed criminal procedure at the time of the trial, provided that the court, if it believed that an accused had been prejudiced in his defense on the merits by a variance between the pleadings and the proof, could postpone the trial, and § 527 provided: "No appeal, or motion made after verdict, based on any such defect, imperfection, omission or variance shall be sustained unless it is affirmatively shown that the accused was in fact prejudiced thereby in his defense upon the merits." Not only did the defendant not take any exception to the court's ruling but he made no affirmative showing of prejudice. The court, nonetheless, offered to allow the recall of witnesses or a continuance, so that the defendant would not suffer from the legitimate admission of relevant testimony from an eyewitness discovered only after the beginning of trial. The court's ruling was entirely proper and fair to both parties.

The defendant next asserts that the record does not support a conviction of first degree assault. He argues that § 53a-59 (a) (1) of the General Statutes under which the defendant was charged requires the state to prove a specific intent to cause a serious loss or impairment of the function of any bodily organ and that the testimony of Pepe and the surgeon who treated him, Irving M. Polayes, did not establish that Pepe suffered any serious loss or impairment.

This claim is also without merit. Section 53a-59 (a) (1) provides that a "person is guilty of assault in the first degree when . . . With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." Section 53a-3 (4) defines "serious

physical injury" as "injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ."

There was evidence from which the jury could have found that the assault was committed with the intent of causing and did cause the injuries specified in the statute. Pepe spent eleven days at Yale-New Haven Hospital after being attacked by the defendant. His upper jaw and cheekbones were broken on both sides as were his nose and the bony portion of his face that houses the eyeballs. These bones were all fractured and displaced. The injuries caused great pain and required a corrective operation after which Pepe wore a head cap or web-type banding to hold the jaw in place. He could not close his teeth together or breathe through his nose. He wore the cap, with his jaw wired closed, for four and a half weeks, during which time he took his nutrition by fluids. In the opinion of the surgeon, even after corrective procedures Pepe suffered serious impairment of the masticatory, or chewing, apparatus. The evidence clearly supported the finding of guilty.

The defendant's final claim is that the court erred in its charge to the jury. He asserts that the charge was "in both emphasis and tonal quality, a prosecution charge," and that the state in argument had referred to the fact that the defendant had called no witnesses in his own behalf, which reference, coupled with the court's instruction that the jury could draw inferences from all the evidence, constituted an infringement on the defendant's constitutional privilege against self-incrimination. Cf. *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106, rehearing denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730.

Observing that "it is my humble judgment that every charge in every case must be pro-defendant," counsel for the defendant took several exceptions to the charge after instructing the court: "Now, sit back and relax for about fifteen or twenty minutes, your Honor." We find no merit to the exceptions to the charge. While it is, of course, impossible from a printed record to determine the validity of the defendant's allegations of judicial impropriety in improperly charging by the tonal qualities of a voice, the printed record of the charge indicates that it fairly presented the case to the jury in such a way that it does not appear that injustice was done to either the defendant or the state and that it was correct in law, adapted to the issues and sufficient for the guidance of the jury. *Goggins* v. *Reinzo Trucking Co.,* 166 Conn. 240, 249, 348 A.2d 569; *State* v. *Edwards,* 163 Conn. 527, 536, 316 A.2d 387; *State* v. *Alterio,* 154 Conn. 23, 27, 220 A.2d 451; *Lucier* v. *Meriden-Wallingford Sand & Stone Co.,* 153 Conn. 422, 425, 216 A.2d 818.

As to the alleged prosecutorial comment on the failure of the defendant to testify, since no record was made of the closing arguments of counsel we are precluded from considering the claim. We do note, however, that the assistant state's attorney disputed the claim that he had made any such comment and the court observed, "I don't recall that either." Even on the basis of the defendant's claims, unsupported by the record, it would appear that as in *State* v. *Rado,* 172 Conn. 74, 372 A.2d 159, only by a strained interpretation of a juxtaposition of the alleged argument and the court's charge would it appear that there was any improper reference to the silence of the defendant. In any event, it would appear that any possible misinterpretation was

obviated by the express instruction of the court in its general charge: "In a criminal case, I have told you that the defendant has no burden of proof whatsoever. He is not required to offer any evidence nor to testify in his own behalf. And, if he chooses to exercise these rights by remaining silent, you must not draw any inferences against him solely because he has chosen such a course. It is still the duty of the state to prove its case against him beyond a reasonable doubt." See *State* v. *Branham,* 171 Conn. 12, 17, 368 A.2d 63; *State* v. *Castagna,* 170 Conn. 80, 91, 364 A.2d 200; *State* v. *LaBreck,* 159 Conn. 346, 348, 269 A.2d 74.

There is no error.

In this opinion the other judges concurred.