STATE OF CONNECTICUT *v.* ROBERT KURVIN

SPEZIALE, C. J., HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

556

Argued January 13—decision released March 30, 1982

*Suzanne Zitser,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Bruce A. Sturman,* assistant public defender, for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

PARSKEY, J.  This appeal[1] challenges the trial court's instructions to the jury in two respects. First, it is claimed that the instructions on intent were constitutionally inadequate.  Second, it is

---

[1] Although the defendant purported to appeal from the verdict rather than the judgment as required by General Statutes § 52-263, this defect in form not being jurisdictional in nature; *Lengel* v. *New Haven Gas Light Co.,* 142 Conn. 70, 75, 111 A.2d 547 (1955); may be disregarded.  *Markiavicus* v. *Bunnell Transportation Co.,* 119 Conn. 310, 312–13, 175 A. 914 (1934); *Schmidt* v. *Schaub,* 115 Conn. 208, 209, 161 A. 98 (1932).

asserted that the instruction pertaining to the factors to be considered by the jury in weighing the defendant's credibility as a witness was constitutionally prejudicial. Because the defendant filed no request to charge and because he took no exception to the court's instructions, we must first determine whether they raise questions of constitutional dimensions; *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982), *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); and if so, then determine whether there is any merit to such claims.

I

The court charged the jury on robbery in the first degree and on the lesser included offense of robbery in the third degree. It instructed the jury that robbery occurs when the accused uses or threatens the immediate use of physical force *"for the purpose of committing a larceny."* (Emphasis added.) In discussing larceny[2] the court charged in the language of General Statutes § 53a-119 that "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes . . . or withholds such property from an owner." Although proof of larceny requires proof of a taking of property with the intent to deprive the owner of possession *permanently; State* v. *Raffone,* 161 Conn. 117, 127–28, 285 A.2d 323 (1971); the

---

[2] Our discussion of this issue applies not only to larceny as the substratum of the robbery charges but also to the claimed lesser included offenses of larceny in the third and fourth degrees. Because the defendant was found guilty of the original charge of robbery, any claimed inadequacy with respect to the charge on the lesser included offenses would have been harmless in any event. *State* v. *Johnson,* 185 Conn. 163, 176 n.2, 440 A.2d 858 (1981).

558

court did not amplify its instructions by explaining that the deprivation or appropriation intended must be permanent.

Due process requires that the state establish beyond a reasonable doubt every essential fact necessary to establish the crime charged; *Patterson v. New York,* 432 U.S. 197, 204, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 698, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); including intent where intent is one of those elements. *Mullaney v. Wilbur,* supra, 702. If there is a reasonable possibility that the jury were misled by a charge on such intent then the giving of such charge constitutes reversible error. *State v. Ruiz,* 171 Conn. 264, 273, 368 A.2d 222 (1976); *State v. Rose,* 169 Conn. 683, 688, 363 A.2d 1077 (1975). The court's failure to explain to the jury the extent of the intended deprivation of property required as an element of the offense raised a sufficient constitutional issue to satisfy the requirements of *Evans.* We, therefore, turn to the merits of the constitutional claim.

A court's charge is not to be examined in a vacuum. Rather, it is to be viewed in the context of the factual issues raised at the trial. See *State v. Rose,* supra, 687. With this in mind the following facts are pertinent: On December 15, 1978, at approximately 2 p.m., members of the New Haven Police Department responded to 257 Highland Street in New Haven on a complaint of a robbery. At the Highland Street address, police spoke with the complainants Connie Civita and Rosemary Greene and obtained a description of the individual and vehicle involved in the robbery. This infor-

mation was broadcasted to other officers in the area and shortly thereafter, in the area of Shelton Avenue and Goodrich Street, police spotted a vehicle and a suspect fitting the description given by the complainants.

At an Arco Gas Station on the corner of Shelton Avenue and Goodrich Street, police attempted to approach the suspect for questioning. The suspect walked away from the area of the officers, however, eventually ducking behind a building and reappearing seconds later. Fearing for their safety, officers drew their guns, searched the suspect, subsequently identified as the defendant, and searched the area behind the building where an automatic small caliber weapon, a holster and three cartridges were found.

Shortly thereafter police brought the complainants to the Arco Station and the defendant was positively identified as the perpetrator of the robbery by both of them. He was then placed under arrest and transported to the police station. A subsequent check of state and local police records revealed that the defendant did not, as of December 15, 1978, have a proper permit to carry a gun. Subsequent investigation revealed that the gun was operable and the cartridges prime.

At the trial, two significantly different versions of the events of December 15, 1978 were put into evidence, one by state witnesses and one by the defense. According to state witnesses, after driving Connie Civita, her daughter, and Rosemary Greene to Starr Street and Sheffield Avenue in his car, the defendant robbed the complainants at gunpoint of $63, threatening to shoot the child if the money was not turned over.

The defendant subsequently took the stand and indicated that there was no robbery nor were any threats made while he drove the complainants and the child in his vehicle. Rather, he testified, when he received an indication that Greene was going to renege on an agreement with respect to drugs she had purchased earlier and was going to share with the defendant, he asked to see the quantity of drugs she had. Once he obtained the drugs for the supposed purpose of assessing the weight of the drugs, he simply informed Greene that he was going to keep the drugs, and subsequently dropped the complainants and the child off. He indicated that though a gun was in the car, he never used it to get the drugs. Thus, though the defendant testified that he obtained property from Greene and that he told her he was going to keep it, according to his version the property consisted of drugs rather than money and no gun or other threat of force was used to obtain it. The defendant does not challenge the court's charge that whether the property taken was drugs or money was immaterial.

The standard with which to test jury instructions in criminal cases is easier to formulate than to apply. " 'Although, in general, the failure to give an instruction is not error unless a request therefor was made, the pertinent principles of substantive law must always be charged, even if the trial judge must do so on his own motion. In defining an offense, the trial judge should include every material element.' " 4 Wharton, Criminal Procedure (12th Ed.) § 540. The court's instructions on the offense charged must include every element of that offense. 75 Am. Jur. 2d, Trial § 713; see annot., " 'Duty in instructing jury in criminal prosecution to explain and define offense charged,' " 169 A.L.R.

315. " 'If justice is to be done . . . it is of paramount importance that the court's instructions be clear, accurate, complete and comprehensible, particularly with respect to the essential elements of the alleged crime.' *United States* v. *Clark,* 475 F.2d 240, 248 (2d Cir. [1973])." *State* v. *Griffin,* 175 Conn. 155, 163, 397 A.2d 89 (1978). When a proper request is filed pursuant to Practice Book § 852 or exception is taken pursuant to § 854 the test is whether the charge properly covered the substance of the written request or properly and adequately covered the specific subject matter of the exception. *State* v. *Reardon,* 172 Conn. 593, 602, 376 A.2d 65 (1977); *State* v. *Huot,* 170 Conn. 463, 465, 365 A.2d 1144 (1976). In the absence of a request or an exception, to warrant reversal the error must consist of a failure to submit to the jury the essential ingredients of the offense on which the conviction rests; *Screws* v. *United States,* 325 U.S. 91, 107, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945); see *State* v. *Reardon,* supra; or the case must involve plain error requiring such result in the interest of justice. Practice Book § 3063; *State* v. *Gelinas,* 160 Conn. 366, 279 A.2d 552 (1971); cf. Fed. R. Crim. Proc. 52(b); *United States* v. *Clark,* supra, 250.

In considering the manner in which the standard is to be applied, we must bear in mind two concepts which if not mutually exclusive at least appear to lead us in opposite directions. The first concept simply stated is that the claimed error under review, because it appears to involve an essential element of a crime, must be examined if not under a constitutional searchlight at least in a constitutional penumbra. "If, when all is said and done, the conviction is sure that the error did not influence the

jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt the conviction cannot stand." *Kotteakos* v. *United States*, 328 U.S. 750, 764–65, 66 S. Ct. 1239, 90 L. Ed. 1557 (1945). Examples of the application of this standard, whatever the stated rationale, are cases where the failure in the charge, when viewed as a whole, consists in omitting or misstating an essential ingredient of the crime charged. *Screws* v. *United States,* supra (failure to charge that in order to convict defendant police officer of a civil rights violation against a prisoner the jury must find that the defendant acted with the purpose of depriving the prisoner of a constitutional right); *United States* v. *Clark,* supra (misleading instruction on possession of narcotics with intent to distribute); *United States* v. *Fields,* 466 F.2d 119 (2d Cir. 1972) (incorrectly charging that proof of actual knowledge that property was stolen was unnecessary to convict on charge of receiving and possessing stolen goods). But when a word contained in an essential element carries its ordinary meaning, failure to give the statutory definition will not constitute error. *State* v. *Maresca,* 173 Conn. 450, 460–61, 377 A.2d 1330 (1977) ("intentionally").

The second concept embodies the conviction that absent real rather than abstract constitutional violations criminal prosecutions should, at some point, be laid to rest. Whether this concept reflects the judicial response to the janiform strategy of presenting, wittingly or unwittingly, one side of the defense coin at trial and another on appeal or a strict appellate approach to criminal trials in general and criminal jury instructions in particular, the result is the same. "In reviewing criminal cases, it is particularly important for appellate courts to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal appeal into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution." *Johnson* v. *United States,* 318 U.S. 189, 202, 63 S. Ct. 549, 87 L. Ed. 704 (1943) (Frankfurter, J., concurring). "Moreover, in reviewing jury instructions our task is also to view the charge itself as part of the whole trial." *United States* v. *Park,* 421 U.S. 658, 674, 95 S. Ct. 1903, 44 L. Ed. 2d 489 (1975). "In this case, the [defendant's] burden is especially heavy because no erroneous instruction was given; his claim of prejudice is based on the failure to give any explanation— beyond the reading of the statutory language itself —of [an essential] element. An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson* v. *Kibbe,* 431 U.S. 145, 155, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977).

We cannot ignore the fact that the defendant saw no reason to take exception to an instruction which he now claims is misleading. "It is the rare case in which an improper instruction will justify a rever-

sal of a criminal conviction when no objection has been made in the trial court." *Henderson* v. *Kibbe,* supra, 154. "We see no reason to require such extravagant protection against errors which were not obviously prejudicial and which the [defendant] himself appeared to disregard." *Namet* v. *United States,* 373 U.S. 179, 190, 83 S. Ct. 1151, 10 L. Ed. 2d 278 (1963). Due process is not to be regarded as a giant constitutional vacuum cleaner which sucks up any claims of error which may occur to a party upon microscopic examination of the trial record. The rule that requires that such claims be raised at the trial is a salutary one. Although it is subject to certain sharply delineated constitutional exceptions; *State* v. *Evans,* supra; and has been applied with some flexibility in capital cases; *State* v. *Reid,* 146 Conn. 227, 230–31, 149 A.2d 698 (1959); the fact that the rule is not adhered to in a limited number of situations "does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on an appeal. Under such a procedure (1) claims of error would be predicated on matters never called to the attention of the trial court and upon which it necessarily could have made no ruling in the true sense of the word; and (2) the appellee, here the state, would be lured into a course of conduct at the trial which it might have altered if it had any inkling that the accused would, in the event of a conviction, claim that such a course of conduct involved rulings which were erroneous and prejudicial to him." *State* v. *Taylor,* 153 Conn. 72, 86–87, 214 A.2d 362 (1965). A claimed constitutional

error, raised for the first time on appeal, will be examined, if at all, not to ascertain whether the ruling or instruction was undesirable, erroneous, or even universally condemned but rather whether when reviewed in the context of the entire trial it violated some right guaranteed to the defendant by the fourteenth amendment to the constitution of the United States; *Cupp* v. *Naughten,* 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); or article first, § 8 of the constitution of Connecticut.

Whether a charge is possibly misleading depends on the substance rather than the form of what is said. The elements of a crime are those constituent parts which must be proved by the state to sustain a conviction. If the court tells the jury what must be proved to sustain a conviction and includes in the recitation all the constituent parts of the crime charged, the fact that these parts are neither labelled nor numbered does not render the recitation misleading.

Due process seeks to assure a defendant a fair trial, not a perfect one. It seeks to have all relevant issues resolved in a single trial, if at all reasonably possible. Subjecting an accused needlessly to multiple prosecutions does not serve the public interest. The requirement that claims of error with respect to jury instructions be raised either by a request to charge or an exception to the charge; Practice Book §§ 852, 854; is not designed to erect an artificial barrier to the correction of judicial error but rather to serve the ends of justice. "The purpose of the rule is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased

court congestion caused by unnecessary trials."
*State* v. *Packard*, 184 Conn. 258, 281, 439 A.2d 983
(1981). Permitting claims of error which could
have been raised at trial to be raised for the
first time on appeal encourages trial by ambuscade
and tends to transform criminal trials into games
of chance. It is in the light of these considerations
and the further consideration that the *Evans* bypass
is designed to protect fundamental constitutional
rights; *State* v. *Gooch,* supra; that we examine the
court's charge to determine whether the claimed
omissions were possibly misleading.

The defendant was charged in the first count of
the information with robbery in the first degree in
violation of General Statutes § 53a-134 (a) (2).
This offense occurs when one who commits robbery
is armed with a deadly weapon. Robbery is defined
in § 53a-133. Under this section "a person commits
robbery when, in the course of committing a lar-
ceny, he uses or threatens the immediate use of
physical force upon another person for the purpose
of: (1) Preventing or overcoming resistance to the
taking of the property or to the retention thereof
immediately after the taking; or (2) compelling the
owner of such property or another person to deliver
up the property or to engage in other conduct which
aids in the commission of the larceny." The court
charged the jury as follows: "A person commits
robbery when in the course of committing a larceny
he uses or threatens the immediate use of physical
force upon another person for the *purpose* to
compel the owners of the property or another per-
son to deliver up the property." (Emphasis added.)
It immediately repeated this instruction. A little
later it charged as follows: "So in this particular
case, without getting into the concept of larceny,

which I'll get into that in a few moments, if you find beyond a reasonable doubt that the defendant for purposes of committing a larceny used a pistol to show or threaten the use of force, for *purposes* of compelling a person to deliver over property, then you would find that the defendant is guilty of robbery in the first degree." (Emphasis added.) General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct." Since the word "purpose" is synonymous with "object" and "intent"; Webster, Third New International Dictionary; the court effectively instructed the jury on the robbery charge that the conscious objective of the use or threatened use of force was compelling the owner of property to deliver it up to the perpetrator. At that point, the only mental state which remained to be discussed related to the concept of deprivation as an element of larceny.

The defendant in challenging the sufficiency of the charge asserts "[a]t the trial, he [the defendant] testified that he had left the remaining amount of heroin upstairs in his house and believed that the value of the total quantity of heroin was somewhere between fifty and sixty dollars. At least on the basis of the defendant's account it would not have been illogical for the jury to conclude that he did not have the felonious intent at the time he took the heroin that was necessary to support a conviction for either the robbery or larceny offenses incorporated in the charge." This argument not only ignores the heroin admittedly consumed but also overlooks the language used by the court in its instructions on robbery. Furthermore, since the

statute, § 53a-133, defines robbery in terms of certain conduct occurring in the course of any larceny, the value of the property stolen is immaterial.

Larceny involves both taking and retaining. The criminal intent involved in larceny relates to both aspects. The taking must be wrongful, that is, without color of right or excuse for the act; *State* v. *Banet,* 140 Conn. 118, 122, 98 A.2d 530 (1953); and without the knowing consent of the owner. *State* v. *Marra,* 174 Conn. 338, 342, 387 A.2d 550 (1978). The requisite intent for retention is permanency. General Statutes § 53a-118 (a) (3) defines "deprive" to mean "(A) to withhold it or cause it to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him, or (B) to dispose of the property in such manner or under such circumstances as to render it unlikely that an owner will recover such property."

It is undisputed that the alleged criminal transaction occurred in the defendant's car. The state's evidence was that the victim Greene was robbed of money at gunpoint. The defendant's version was that he and Greene had agreed to share some heroin, that when he requested his share, Greene handed it over to him, at which point he told her that he was going to keep it and that subsequently he used half of what he received from her. There was no claim and no evidence to support a claim of borrowing or temporary deprivation. Indeed, the inference to be drawn from the defendant's testimony that he told Greene that he was going to keep the drugs and that he used half of the heroin, at least with respect to the half consumed, would have been sufficient to

establish the requisite intent with respect to deprivation. The issue before the jury was whether the taking was wrongful. That the retention was permanent and intended to be so was undisputed. While the court would have been well advised to have explained the nature and extent of deprivation contemplated by the statute, in view of the factual posture of the case, we cannot conclude that there was a reasonable possibility that the jury were misled by the trial court's reluctance to elaborate upon the precise words of the statute.

In finding no error we are not to be understood as approving the charge as given. "We recognize that the task of delivering an accurate and truly instructive charge to a jury is a demanding one. Of foremost importance is the necessity for organizing and outlining governing legal principles in a logical sequence that will fairly inform the jurors of the essential rules to be applied by them in reaching their verdict. Certain principles, of course, are of such a standard and recurring nature that they should present no serious problem for the court in the average case. Others require more preparation and thought on the judge's part. Complex legalisms must be translated into simple prose that will be understandable by the average layman. The essential elements of the crime or crimes and of any defenses raised by the defendant should be clearly described. Terms of legal significance should be defined in a way that will be understood. If illustrations are to be given, and they are often instructive, they should be furnished in addition to, not in substitution for, plain explanations of those criteria that are to govern the jury's deliberations." *United States* v. *Clark,* 475 F.2d 240, 250–51 (2d Cir. 1973).

## II

The defendant challenges the reference in the charge to his interest in the outcome of the trial. Although he took no exception to this charge, he asserts that we should consider this claim under the *Evans* by-pass because this instruction denigrated his testimony and depreciated his right to testify. Because we have considered and rejected this constitutional challenge on numerous occasions in the past; *State* v. *Maselli,* 182 Conn. 66, 74, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Mastropetre,* 175 Conn. 512, 525, 400 A.2d 276 (1978); *State* v. *Bennett,* 172 Conn. 324, 335–37, 374 A.2d 247 (1977); *State* v. *Jonas,* 169 Conn. 566, 577, 363 A.2d 1378 (1975); *State* v. *Guthridge,* 164 Conn. 145, 151, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973); this claim merits no consideration under *Evans.* [3]

There is no error.

In this opinion ARMENTANO and SHEA, Js., concurred.

SPEZIALE, C. J. (dissenting). Because I would find error in the failure of the trial court to instruct on intent, I disagree with the majority opinion. In its treatment of this issue, the majority misunderstands the defendant's claim of error and, therefore, does not fully address the claim.

[3] This is not to say that at some future time this court, especially in the case of a material variation of the language used here, might not reconsider the question of whether such a reference in the charge amounts to a violation of the defendant's due process rights either under the state or federal constitution.

The defendant's first claim of error[1] is concerned with the failure of the court to instruct on intent as an element of larceny, which is an element of the crime charged, robbery in the first degree. See General Statutes §§ 53a-119, 53a-133, 53a-134. In his brief the defendant expressly questions the sufficiency of the court's instructions on the intent required for larceny, *not* only the adequacy of the court's explanation of the nature of the deprivation required for larceny.[2] The defendant alleges that the trial court erred in failing "to sufficiently apprise and explain to the jury the element of intent . . . ."[3] As a matter of fact, the jury were not even told that intent is an element of the crime charged. An examination of the instructions actually given by the trial court makes the defendant's claim quite clear. The court's instructions never spelled out intent as an element of the offense charged nor gave the jury any explanation of intent or guidance as to how they were to determine intent. In fact, the word "intent" appears in the court's instructions only twice, both times when the court read to the

---

[1] I agree with the majority's disposition of the defendant's second claim regarding the court's instructions on the defendant's interest in the outcome of the trial as a factor in evaluating his credibility as a witness; however, in my view it would be unnecessary to reach this claim.

[2] During oral argument before us, the counsel for the defendant stated: "On page 10 [of the state's brief], the state misconstrues the defendant's claim by implying that his allegation of error relies solely on the omission of the word 'permanently.' Although that omission certainly supports his claim that the court failed to adequately provide the jury with the proper guidelines, the defendant's claim is based on the total failure of the court to define the element of intent as requiring conscious objective."

[3] The majority's discussion of the court's use of the word "purpose" in the instructions on robbery as defined in General Statutes § 53a-133 is irrelevant to the claim of error regarding the sufficiency of the instructions on intent as an element of larceny, which is an element of robbery. See General Statutes §§ 53a-119, 53a-133.

jury verbatim the statutory definition of larceny from General Statutes § 53a-119 while explaining that larceny was an element of robbery.[4]

Jury instructions, of course, need "not be exhaustive, perfect or technically accurate," so long as they are "correct in law, adapted to the issues and sufficient for the guidance of the jury." *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94, 98 A.2d 664 (1953); see *Messina* v. *Iannucci,* 174 Conn. 275, 278, 386 A.2d 241 (1978); *State* v. *Sawicki,* 173 Conn. 389, 396, 377 A.2d 1103 (1977). An error of constitutional dimension in the instructions in a criminal case is reversible error when it is reasonably possible that the jury were misled by the instructions. *State* v. *Ruiz,* 171 Conn. 264, 273–74, 368 A.2d 222 (1976); *State* v. *Rose,* 169 Conn. 683, 687–88, 363 A.2d 1077 (1975).

By pleading not guilty, the defendant has "put in issue every essential element of the crime

---

[4] The court's entire instructions on the issue of intent were as follows: "Now, remember when I told you that the subject of a robbery is a larceny? I'm going to give you the concept of larceny. 'A Person commits larceny when with intent to deprive another person of property or to appropriate the same to himself or a third person, he wrongfully takes or withholds such property from an owner.' So, when you consider in your deliberations robbery in the first degree, you must in order for the defendant to be found guilty of the crime of robbery in the first degree or robbery in the third degree, you must find that this threatened use of force or actual physical force that was used was for the purpose of committing a larceny. Larceny is one of the elements that you must consider before you can find the defendant guilty of the charge of robbery either in the first degree or robbery in the third degree.

"Let me give it to you again. 'A person commits a larceny when with intent to deprive another person of property or to appropriate the same to himself or a third person, he wrongfully takes or withholds such property from an owner.' 'Wrongfully takes property from an owner or withholds the property from an owner' in this particular case means money or it could be personal property which would include drugs."

charged. *Roe* v. *United States,* 287 F.2d 435 (5th Cir.), cert. denied, 368 U.S. 824, 82 S. Ct. 43, 7 L. Ed. 2d 29 [1961]; 21 Am. Jur. 2d, Criminal Law, § 467; 22 C.J.S., Criminal Law, § 454. With that, the burden rested upon the prosecution to prove the guilt of the accused, i.e., to prove each material element of the offense charged beyond a reasonable doubt. *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 [1975]; *State* v. *Johnson,* 162 Conn. 215, 231, 292 A.2d 903 [1972]; *State* v. *Jenkins,* 158 Conn. 149, 154, 256 A.2d 223 [1969]; 1 Wharton, Criminal Evidence (13th Ed.) § 10. The United States Supreme Court has explicitly held that the due process clause requires that every fact necessary to constitute the crime of which an accused stands charged must be proven beyond a reasonable doubt before a conviction. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 [1970]. Therefore, it cannot be considered harmless error for a jury to find an accused guilty without even knowing what are the essential elements of the crime charged. *United States* v. *Howard,* 506 F.2d 1131, 1134 (2d Cir. [1974])." *State* v. *Griffin,* 175 Conn. 155, 162–63, 397 A.2d 89 (1978). "The court was required to instruct the jury as to the essential elements of the crime and the criminal intent necessary to commit the offenses charged." *State* v. *Sumner,* 178 Conn. 163, 170, 422 A.2d 299 (1979). The charge must give "the jury a clear understanding of the elements of the crime charged and the proper guidance to determine if those elements were present." *State* v. *Avila,* 166 Conn. 569, 574, 353 A.2d 776 (1974). A bare reading of the statutory charges is not sufficient. Cf. *State* v. *Sumner,* supra, 170–71; *Crane* v. *Hartford-Connecticut Trust Co.,* 111 Conn. 313, 315, 149 A. 782 (1930).

574

The law and reasoning set forth at great length in the majority opinion support my position that the court's instructions were not sufficient to identify and explain the element of intent to the jury or to guide the jury in its determination of intent. This failure amounts to much more than merely not labeling or numbering the elements of the crime charged because the defendant has a fundamental right to a fair trial and to be convicted only upon proof beyond a reasonable doubt of all of the elements of the crime charged.[5] It is, therefore, reasonably possible that the jury were misled by this instruction and, thus, could have reached the verdict in an unconstitutional manner. Cf. *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). The instructions given in this case were insufficient as a matter of law on the element of intent and the defendant in the interests of justice is entitled to a new trial.

In this opinion HEALEY, J., concurred.

---

[5] The issue before this court concerns the adequacy of the trial court's instructions, not the sufficiency of the evidence. The majority's detailed discussion of the facts, apparently to support the conclusion that the jury could have reasonably inferred the required intent from the evidence presented, is irrelevant to the claim of error in this case. The error claimed here is not that the instructions were improperly adapted to the facts, but rather that the intent instructions, or absence thereof, did not meet the minimum constitutional requirements, regardless of the facts of the case.