[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR PREJUDGMENT REMEDY
This matter comes to the court on an application for a prejudgment remedy by a real estate broker seeking an attachment based on a claim of an unpaid brokerage sales commission. The operative facts are as follows.
The defendants property was sold on February 12, 1999 for $1,045,000 and the plaintiff, a real estate broker who listed the property for sale, claimed a brokerage commission therefore. (Stipulation of Parties, #1, 2.) The seller disputed plaintiff's right to recover any commission on this sale. Nevertheless, the CT Page 11272 defendant agreed that her attorney would hold in escrow $20,000 of the sale proceeds to dispose of the broker's claim.
On February 24, 1999, the seller authorized her attorney to offer the plaintiff $20,000 to settle this dispute. (This offer hereinafter referred to as the February 24th offer.) This settlement offer was unambiguous and unconditional. However, on February 26, 1999 and before the February 24th offer was communicated to the plaintiff, the seller's husband, Barry Southard[1], within earshot of the defendant, telephoned the plaintiff directly and offered to settle the commission dispute for $20,000 and no more if the plaintiff did not further consultwith her attorney. (This offer is hereinafter referred to as the "Southard offer.") The defendant did not speak with the plaintiff at this time nor does the record indicate that the plaintiff was aware that the defendant was listening to this conversation. In any event, the plaintiff rejected this offer out of hand and hung up the phone on Mr. Southard without further comment. The defendant overheard the plaintiff's conversation and was aware of her rejection. Thereafter, the seller and her husband left on a short vacation without informing her attorney of the Southard offer and rejection.
On March 4, 1999, the defendant's attorney, who was unaware of the Southard offer and rejection, telephoned the plaintiff's attorney and on behalf of his client communicated the February 24th offer to him. This offer was identical to the offer communicated to him by the defendant on February 24th Plaintiff's attorney, also unaware of the Southard offer at this time, requested time to discuss this offer with his client which he subsequently did. During this discussion, the plaintiff revealed to her attorney the circumstances of the February 24th rejection. Plaintiff's attorney, however, was able to convince the plaintiff to accept the $20,000 in full settlement of the dispute. The plaintiff and her attorney were unaware that defendant had not advised her attorney of the rejection that took place on February 24th On March 8th the plaintiff's attorney communicated plaintiff's acceptance of the February 24th offer. The attorneys agreed to prepare the necessary settlement documents for signing by their respective principals. Again, the defendant's attorney was unaware of the events of February 26th nor had the defendant contacted him about them.
Upon return from vacation, the defendant was informed by her attorney that he had successfully negotiated a settlement of the CT Page 11273 dispute according to the terms authorized by her on February 24. It was at this time that she informed him for the first time of the offer and rejection that took place on February 26th. The defendant refused to proceed with the settlement because she had "changed her mind" about settling and the offer had been withdrawn.[2] This application followed.
At the hearing on June 29, 1999, after reviewing a statement of facts stipulated to by the parties and the taking of testimony of both parties and Mr. Southard, an additional issue arose regarding the application of the statute of frauds to the unwritten settlement agreement. At the conclusion of testimony and oral argument, this court articulated preliminary findings of fact and conclusions of law regarding all issues except the statute of frauds issue and requested briefs be filed on that issue and continued the matter for that purpose.
After further reflection on this matter and notwithstanding any previous preliminary conclusions to the contrary, this court now concludes that this matter turns on the simple question of whether a settlement agreement was ever concluded. This court now concludes that the February 24th offer was accepted and was binding on the defendant despite the fact that it had not been reduced to writing because the statute of frauds does not apply to settlement agreements.
This court concludes from the evidence that there were two separate and distinct offers of settlement afloat at the same time-the February 24th offer communicated by the defendant to her attorney and subsequently communicated to the plaintiff and the Southard offer. These offers although generally similar were different because the Southard offer contained a condition[3]
while the February 24th offer was unconditional.
Assuming that at all times relevant Mr. Southard was acting as Ms. Gallo's agent in this transaction[4], it is undisputed that the Southard offer was rejected by the plaintiff when made. It is well settled that under contract law an offer once rejected is terminated. See Castaldo v. D'Eramo, 140 Conn. 88, 92,98 A.2d 664 (1953). If this were the only offer outstanding, then this would be conclusive of the issue. However, since the defendant had not informed her attorney that all offers-especially the offer she communicated to him on February 24th-had been withdrawn for whatever reason[5], the court concludes that the February 24th offer remained a viable offer that was capable of being CT Page 11274 accepted under the circumstances of this case.
Those circumstances were (1) the defendant's attorney was unaware of any rejection/withdrawal of the February 24th offer; (2) that such offer was made by him in good faith; (3) that because the time sequence between the two offers was unknown to the plaintiff and because the February 24th offer, which was communicated to her subsequent to the Southard offer and contained no conditions, the plaintiff could reasonably conclude that the defendant had made a second[6] offer.
It is well settled law that an attorney who has received precedent special authorization to compromise a claim for his client and does so in accordance with such authorization will bind his client to that agreement if it is accepted by a third party. Cole v. Myers, 128 Conn. 223, 227, 21 A.2d 396 (1941); seealso, Sciremammano v. H W Hideway Cafe, Superior Court,judicial district of New London at New London, Docket No. 515845(April 6, 1993, Hurley, J.). And under both agency and estoppel principles, where the principal knows of circumstances that would terminate that special authority and further has reason to know that the attorney has no such knowledge, the principal has a duty to inform the attorney that his authority is terminated at the risk of being bound by the attorney's actions pursuant to that authority. See 2 Restatement (Second), Agency § 435, and comment (c); see also, 1 Restatement (Second), Agency § 140, and comment (a), and § 141, and comment (b)(1958)
In the present case the defendant was aware of the plaintiff's rejection of the Southard offer while her attorney was not. Furthermore, she knew or should have known that her attorney had no way of knowing that a rejection had taken place. Moreover, her attorney was not in the possession of any facts that would at the very least put him on notice to inquire further of his client before transmitting the February 24th offer to the plaintiff's attorney. The defendant, knowing that she had "changed her mind", and knowing that her attorney was unaware of this development did nothing to notify him that the same had been withdrawn. Instead, she and her husband went on what might turn out to be a very expensive short vacation. While on vacation, the plaintiff accepted the exact offer that the defendant had authorized her attorney to make. For the reasons already expressed, the defendant may not now repudiate it.
The defendant next argues that because the settlement CT Page 11275 agreement was not in writing, it is in violation of the statute of frauds and therefore unenforceable.[7] The court finds this position to be untenable.
It is fundamental that courts will enforce settlement agreements even if not reduced to writing where the terms of agreement are not in dispute and are clear and unambiguous.Thomsen v. Aqua Massage Intnl., Inc. (check cite), cert. denied,248 Conn. 902 (1997); see also, Ballard v. Asset RecoveryManagement, 39 Conn. App. 805, cert. denied, 236 Conn. 906,670 A.2d 1306 (1995); Zauner v. Brewer, Superior Court, judicialdistrict of Litchifield, docket no. 49135 (Aug. 11, 1992, Gill,J.).
Finally, because the statute of frauds and settlement agreements serve different objectives, our courts have not applied the statute of frauds to settlement agreements even where the agreement underlies an interest in land. The function of the statute is evidentiary, to prevent enforcement through fraud or perjury of contracts that were never made. Lynch v. Davis,181 Conn. 434, 440-41 (1980). Consequently, policy dictates that such agreements not be enforceable. See Bennett v. Meader,208 Conn. 352, 362 n. 8, (1988). On the other hand, the elements of fraud and perjury are not implicated in settlement agreements. The enforcement of such agreements is predicated upon the fact that there is an agreement in existence whose terms are not in dispute. Terwilliger v. Terwilliger, 29 Conn. Sup. 465, 470(1980). Enforcement of agreements that are designed to resolvebona fide disputes are favored by the law. Id. Such agreements are to be encouraged because they promote peace and harmony and the courts will therefore hold the parties to their agreement where such intention is unambiguous. Consequently, our courts have held that an oral agreement to settle a disputed claim is enforceable despite the fact that it may be otherwise subject to our statute of frauds. See Zauner v. Brewer, supra, Superior Court, docket no. 49135.
In the present case, it appears that both parties intended to settle their dispute over the claimed brokerage commission on clear and unambiguous terms set forth in the February 24th offer and that the plaintiff duly accepted that offer in good faith. That being the case, the agreement ought to be enforced.
In view of the foregoing findings of fact and conclusions of law, this court is of the opinion that it is probable that the CT Page 11276 applicant will recover a judgment against the defendant in the amount of $20,000. Accordingly, the court hereby GRANTS plaintiff's application for the prejudgment remedy as requested in the amount of $20,000.
Melville, J.