STATE OF CONNECTICUT *v.* DONALD A. RADO

HOUSE, C. J., LOISELLE, BOGDANSKI, BARBER and MACDONALD, Js.

Argued October 6—decision released December 14, 1976

*Richard D. Casella,* for the appellant (defendant).

*Walter H. Scanlon,* assistant state's attorney, with whom was *Francis M. McDonald, Jr.,* state's attorney, for the appellee (state).

MacDonald, J. On a trial to a jury, the defendant was found guilty of one count of robbery in the first degree in violation of § 53a-134 of the General Statutes, one count of burglary in the first degree in violation of § 53a-101 and one count of conspiracy in violation of § 53a-48. On his appeal to this court, the defendant raises six issues, assigning error to several rulings on evidence made during the trial, the denial of his motion for a mistrial with respect to the testimony of one of the state's witnesses and

the denial of his motion to set aside the verdict and order a new trial because of a claimed improper remark by the state's attorney during his summation. In order adequately to review the claimed errors, it is necessary to consider only the following facts as to which the state produced evidence and as set forth in the statements of facts printed in the briefs.

On the evening of July 2, 1972, Sean T. Donnelly, Wayne J. Epprecht and Fred J. Hall went to the home of the defendant, Donald A. Rado, and discussed a proposed robbery of a jeweler's widow, Theresa A. Hyman, whose home was directly opposite and clearly visible from the back porch of the Rado home. Rado pointed out the Hyman house and stated that it could contain money and jewelry. The next day, July 3, Hall, Donnelly and Epprecht drove in Hall's car to Rado's home. Late in the afternoon, Donnelly went to the nearby home of Rado's neighbor, John Spinella, to help with some carpentry. After Donnelly's return, the four men met in the basement of Rado's home, where Rado gave Epprecht a .32 caliber pistol and Hall gave Donnelly a .38 caliber pistol. Rado instructed Donnelly and Epprecht that they were to use the pistols to rob the Hyman home, gave Donnelly a walkie-talkie portable transceiver to carry with him during the robbery and agreed to remain at his home during the robbery "in the event anything happened."

Hall drove Donnelly and Epprecht to the Hyman home and remained in his car while Donnelly and Epprecht forced their way into the house, struck and bound Theresa Hyman and ransacked the house, taking a number of items of jewelry. When surprised by a neighbor, Donnelly and Epprecht fled, dropping Rado's walkie-talkie in their haste, were

picked up by Hall in his car, and returned to Rado's home, where they changed their clothes and gave the pistols back to Rado. The ownership of the walkie-talkie dropped by Donnelly was traced to Rado and, during a search authorized by a warrant, the pistol used by Epprecht during the robbery was found in the Rado home.

Three of the errors claimed by the defendant pertain to rulings made by the court with respect to the testimony of Hall who, after pleading guilty to the crime of conspiracy to commit the robbery involved here, was called as a state's witness, the remaining charges against him of burglary and robbery having been nolled. Claiming error in the court's permitting the state even to produce Hall as a witness when the state "knew or should have known that he would refuse to testify," the defendant cites *State* v. *Moynahan,* 164 Conn. 560, 586, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 where we state: "A prosecutor or state's attorney, in a criminal case, may not call anyone who, in any capacity, has become so involved in the defendant's criminal activities *as to be liable to prosecution* for the same offense or for another offense growing out of the transaction from which the defendant's alleged offenses arise, *with a design or purpose of extracting a claim of privilege against self-incrimination."* (Emphasis added.) The inapplicability of this language to the defendant's claim is clearly indicated by the emphasized words. Hall, an accomplice of the defendant, already had pleaded guilty to his participation in the transaction from which the defendant's offenses arose and, accordingly, unlike the witness in *Moynahan,* no longer had the privilege against self-incrimination since he no longer could be incriminated by his testimony con-

cerning the crime under consideration. "It is well established that once a witness has been convicted for the transactions in question, he is no longer able to claim the privilege of the Fifth Amendment and may be compelled to testify." *United States* v. *Romero,* 249 F.2d 371, 375 (2d Cir.); *Reina* v. *United States,* 364 U.S. 507, 513, 81 S. Ct. 260, 5 L. Ed. 2d 249; *Brown* v. *Walker,* 161 U.S. 591, 597–600, 16 S. Ct. 644, 40 L. Ed. 819.

Returning to the words emphasized in the above quotation from our opinion in *Moynahan,* there was no showing or suggestion here that the state knew or should have known in advance of the trial that Hall would attempt to invoke the privilege. See *Namet* v. *United States,* 373 U.S. 179, 83 S. Ct. 1151, 10 L. Ed. 2d 278, which held that the trial court's permitting the prosecution to ask witnesses incriminating questions concerning their relationship with the defendant with the knowledge that the witnesses would invoke the privilege against self-incrimination did not constitute reversible error, the court stating (p. 189): "We cannot find that these few lapses, when viewed in the context of the entire trial, amounted to planned or deliberate attempts by the Government to make capital out of witnesses' refusals to testify." As a matter of fact, the state might well have been in derogation of its duties if it had not called Hall as a witness for, as stated by the court in *United States* v. *Romero,* supra, 375, "[i]n view of the fact that . . . [Hall] had intimate knowledge of the transactions upon which the prosecution was based, the government ran the risk of argument to the jury by defense counsel that the government's failure to call an available witness raised the inference that his testimony would be unfavorable to the government's case." Clearly, it

was not error, under the circumstances, for the court to permit the state's attorney to produce Hall as its witness nor, for the reasons given and under the authorities cited above, was it error, as claimed by the defendant, for the court to order Hall to testify despite his repeated invocation of the fifth amendment.

The defendant also claims that the court erred in permitting the state's attorney to interrogate the witness Hall "from a document not in evidence and which was clearly hearsay, under the guise of refreshing his recollection." The document in question was the stenographic transcript of statements made in open court by Hall a few weeks prior to the trial in the course of his pleading guilty to the offense of conspiracy to commit the robbery and burglary in question. His determination not to testify as to events immediately preceding the commission of this crime was made apparent by his repeated statements that he could not remember them. The use of a transcript of his prior statements to refresh his recollection was entirely proper, as were the questions asked by the state's attorney in cross-examination of a witness who specifically had been found by the court to be hostile. "Any memorandum which can in fact stimulate the present recollection may be used, whether made by the witness or not, whether it be the original or a copy, or whether made at the time of the events testified to or not. In the case of the past recollection the memorandum may be laid in evidence as a part of the direct examination, while in the case of the present recollection it may not, since it is the recollection, not the memorandum, which is the evidence." *Neff* v. *Neff*, 96 Conn. 273, 278–79, 114 A. 126.

The defendant claims support for his position in *Douglas* v. *Alabama,* 380 U.S. 415, 85 S. Ct. 1074, 13 L. Ed. 2d 934, where the court held that it was a violation of the defendant's constitutional right to permit the state's attorney to use a confession signed by an accomplice to refresh the accomplice's recollection when he was called as a state's witness and relied on his privilege to refuse to answer. In pointing out that effective confrontation by cross-examination of the witness was made impossible by his refusal to answer, the court in *Douglas,* quoting *Namet,* stated (p. 420): "The circumstances are therefore such that 'inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.'" Here, confrontation of Hall was made possible by his affirmation of the questions propounded to him by the state's attorney, specifically affirming that the prior statements he had made in open court, as recorded in the transcript, were his and were true and concerning which the defendant could and, in fact, did cross-examine him at length. The court did not err in permitting the state's attorney to cross-examine Hall from the transcript of his statements made in open court at a prior hearing.

The defendant, in his statement of issues and argument to this court, claims error in allowing testimony from Epprecht and Hall "concerning evidence of another crime, said evidence being irrelevant and hearsay." The entire thrust of his argument on that issue before this court is addressed to the prejudicial nature of evidence of other crimes involving the accused, but the record discloses that this argument was not made to the trial

court. The only exception taken during the intro-
duction of the testimony under consideration was
to the court's overruling an objection that evidence
as to a statement made by the defendant was hear-
say. Since the statement in question was not a con-
fession or admission, the ruling was correct, and the
state properly claimed that the grounds for objec-
tion now urged on appeal differ from those stated
during the trial. "To assign error in the court's
evidential ruling on the basis of objections never
raised at the trial amounts to trial by ambuscade
of the trial judge. . . . 'This court is not bound to
consider claims of law not made at the trial.' " *State*
v. *Johnson,* 166 Conn. 439, 444–45, 352 A.2d 294.
Inasmuch as the record discloses that the other
crime mentioned in the testimony admitted did not
involve or concern the defendant, no prejudice to the
defendant can be claimed to constitute "exceptional
circumstances," as discussed in *State* v. *Evans,* 165
Conn. 61, 69–71, 327 A.2d 576, to require our con-
sideration of the ground for objection now urged
for the first time.

The claimed error in denying the defendant's
motion for a mistrial with respect to the testimony
of the witness John Spinella came about when
Spinella, a neighbor of the defendant, became ill
while testifying for the state and was unable to
return to court for cross-examination by the defend-
ant. His testimony was merely corroborative of
that of Donnelly wherein Donnelly stated that on
the afternoon of July 3, 1972, while he was at Rado's
home, he and Rado had gone to Spinella's home and
assisted him with some carpentry. When Spinella
was unable to return to court, his son, John Spi-
nella, Jr., was called by the state and gave sub-
stantially the same testimony as had his father,

with respect to which the defendant, although given the opportunity, failed to cross-examine. Under the circumstances, the state moved to strike the testimony of the elder Spinella as unnecessary and the court, over objection of the defendant, granted that motion and subsequently denied the defendant's motion for a mistrial based upon the grounds that his testimony could give rise to damaging inferences. The court, however, did instruct the jury to disregard the testimony of the elder Spinella in a charge set forth in the footnote.[1] The decision to strike the testimony of the elder Spinella, accompanied by the cautionary instruction to the jury as an alternative to declaring a mistrial, was within the sound discretion of the trial court, especially where the son had testified to the same relatively unimportant facts as had his father and was not cross-examined by the defendant.

The final assignment of error pertains to the denial of the defendant's motion to set aside the verdict and order a new trial because of an allegedly improper remark made by the state's attorney during his summation to the jury and which, it is claimed by the defendant, referred to his failure to testify.

The remark to which objection was made was a statement that the defendant was "hiding behind

[1] "The Court: Now, ladies and gentlemen, just to bring you up to date, briefly, I indicated to you yesterday that the last witness you had heard last week, a Mr. John Spinella, who had been on the stand here before I let you go for the weekend, yesterday it was brought to the Court's attention that he had been hospitalized after he left here last week, and the condition of his health was going to be checked upon by the State. It has been reported to the Court that he is still in the hospital. He is ill. And rather than hold up this trial, the Court at this time — the Court in your absence has stricken his entire testimony from the record in this case, and at this time I not only caution you, but I order you to completely disregard his entire testimony and to dismiss it from your minds."

the skirts of his wife and aging mother-in-law," and the entire record of the claimed improper remark and the action taken by defense counsel at the time appears in the footnote.[2] It should be noted that, contrary to the defendant's claim in his brief that "a Motion for Mistrial was made because of this comment and was denied" and at variance with his statement of the issue presented as the denial of his motion for a mistrial, no such motion actually was made or denied nor was the objection so stated that the trial court had before it the exact basis of the defendant's objection. The first specific mention of this issue in the record was in an "Amendment to Motion to Set Aside the Verdict and Order New Trial for the Defendant" filed approximately one month after the trial. In view of the fact, however, that the defendant has claimed a violation of a constitutional right, namely, his privilege against self-incrimination guaranteed by the fifth amendment to the United States constitution and article first, § 8, of the Connecticut constitution, and since he did make timely objection and noted an exception to the court's action in permitting the state's attorney to continue without further action at the time, we will consider this claim as being properly before the court.

Section 54-84 of the General Statutes provides, in relevant part: "The neglect or refusal of an accused party to testify shall not be commented upon to the court or jury." In addition to this statutory protection it is, of course, undisputed that the defend-

[2] "Mr. Casella: I object, your Honor, to that last statement, 'hiding behind the skirts of his wife and aging mother-in-law.'

"The Court: You may be seated, Mr. Casella. You may proceed, Mr. Scanlon.

"Mr. Casella: May I have an exception?

"The Court: Exception noted."

ant is protected against any adverse comments concerning his failure to testify by such decisions of the United States Supreme Court as *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106, rehearing denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730, and *Chapman* v. *California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, rehearing denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241; see *State* v. *Branham,* 171 Conn. 12, 368 A.2d 63. An examination of the United States Supreme Court decisions cited by the defendant including *Griffin* and *Chapman,* however, discloses that the prosecutor's comments there under consideration were unmistakably and even flagrantly directed toward the failure of the defendant to testify.[3] In the case before us, by contrast, no direct reference was made to the failure of the defendant to testify and any inference of such reference, under the circumstances of this case, can be found only by rather strained interpretation. In the concluding paragraph of his brief, the defendant states: "That such words were a comment on the defendant's failure to testify is evident because his two main witnesses were his wife and aging mother-in-law taking up most of the defense's case-in-chief." Inasmuch as it is apparent from this candid statement, without even consulting the record, that the defense was based almost entirely upon the testimony of the defendant's wife and mother-in-law, the state's

[3] In *Griffin,* for example, the remarks of the prosecutor (p. 611) included the following:

"These things he has not seen fit to take the stand and deny or explain. And in the whole world, if anybody would know, this defendant would know. Essie May is dead, she can't tell you her side of the story. The defendant won't."

In *Chapman,* an appendix to the opinion (pp. 26–42) includes seventeen pages of the prosecutor's comments containing literally dozens of caustic references to the failure of the defendants to testify.

attorney's characterization of the defense was a reasonably accurate assessment, even though in less than flattering language. The trial court, in order to make certain that the jurors, if they did interpret the remark as a reference to the defendant's failure to testify, would totally disregard it, charged them as to the defendant's right not to testify, and instructed them completely to disregard the remark in question, as fully set forth in the footnote.[4] It also should be noted that the court omitted from its charge any further clarification of the defendant's right not to testify at the express request of the defendant.[5]

---

[4] "The Court: Ladies and gentlemen, on reflection here, the point that Mr. Casella brought up as to any construction of the term 'hiding behind the skirts' of anyone, that Mr. Scanlon used here, I am going to ask you to completely disregard that. If at all, he was referring to the fact that the defendant did not take the stand, and I will later on explain that to you more fully, that the defendant does not have to take the stand. So I am going to order those remarks stricken from the record in compliance with the request of Attorney Casella, and ask you to disregard those remarks completely.

"Mr. Scanlon: May I make one statement, your Honor? That was not the purpose.

"The Court: All right."

[5] "The Court: All right, gentlemen, I am about to call the jury to charge them on the law. Mr. Casella, is there something you would like to say for the record at this point?

"Mr. Casella: I would just like to state, your Honor, I filed no request to charge as to the defendant not taking the stand in this matter, and I would prefer that your Honor would give no — make no reference to that.

"The Court: Even though the Court did make some reference to that fact when the Court stated he did not have to take the stand when you moved the jury be cautioned about the remarks of Mr. Scanlon?

"Mr. Casella: Even though that is true.

"The Court: At this time, you would request the Court not to make any reference to the fact that the accused did not take the stand?

"Mr. Casella: Yes, your Honor.

"The Court: All right. The record will so indicate."

Under the particular circumstances of this case, it is difficult to see how the remark of the state's attorney could be interpreted as a reference to the failure of the defendant to testify or, under any interpretation, how it prejudiced him. In *State* v. *Monahan,* 96 Conn. 289, 291, 114 A. 102, this court stated, in considering an allegedly unfair comment by the state's attorney in the light of the predecessor statute to our present § 54-84: "But disobedience of this statutory rule of practice does not entitle the accused to a new trial as of right, unless it appears to have injuriously prejudiced him before the jury. And failure of the court to enforce the statute will not of itself be ground for granting a new trial, for the accused may waive its enforcement 'by neglecting to move for a discharge of the jury at the time and by proceeding without further objection or motion to an adverse ending of the trial.' *State* v. *Buxton,* 79 Conn. 477, 480, 65 Atl. 957." And in language strikingly applicable to the facts of the present case, the court continued (p. 292): "The comment objected to was not comment upon the failure of the accused . . . to testify. It neither directly referred to that fact, nor could an inference to that effect be fairly drawn from the comment. The comment was to the failure of the defense to produce evidence which was essential to the case of the accused. The statute prevents prejudice to an accused from his failure to testify; it does not prevent prejudice to his case from the failure to produce any evidence, or any sufficient evidence, to establish his case."

Even if the remark under discussion were to be construed as an oblique reference to the failure of the defendant to testify, it is difficult to see how he could have been prejudiced thereby. In *Chapman*

v. *California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d
705, decided after both *Monahan* and *Griffin,* the
United States Supreme Court held that before an
error involving the denial of a federal constitutional
right can be held harmless in a state criminal case,
the reviewing court must be satisfied beyond a rea-
sonable doubt that the error did not contribute to
the defendant's conviction. It further observed
(pp. 21–22): "We are urged . . . to hold that all
federal constitutional errors, *regardless of the facts
and circumstances,* must always be deemed harmful.
Such a holding, as petitioners correctly point out,
would require an automatic reversal of their convic-
tions and make further discussion unnecessary. We
decline to adopt any such rule." (Emphasis added.)
One of the "facts and circumstances" of the present
case that must be considered in determining whether
the error, if any, was harmful, is the overwhelming
evidence against the defendant as revealed by the
record and even by reference to those portions of
the evidence referred to in this opinion. In *Milton*
v. *Wainwright,* 407 U.S. 371, 377, 92 S. Ct. 2174,
33 L. Ed. 2d 1, the court observed: "[T]he federal
courts do not sit to re-try state cases de novo but,
rather, to review for violation of federal constitu-
tional standards. In that process we do not close
our eyes to the reality of overwhelming evidence of
guilt fairly established in the state court," and
again (p. 372): "Assuming, arguendo, that the chal-
lenged testimony should have been excluded, the
record clearly reveals that any error in its admis-
sion was harmless beyond a reasonable doubt. *Har-
rington* v. *California,* 395 U.S. 250 . . . [89 S. Ct.
1726, 23 L. Ed. 2d 284]; *Chapman* v. *California,*
386 U.S. 18 . . . [87 S. Ct. 824, 17 L. Ed. 2d 705].

The jury, in addition to hearing the challenged testimony, was presented with overwhelming evidence of petitioner's guilt."

Another of the "facts and circumstances" to be considered under the *Chapman* test is the fact that the trial court clearly instructed the jury to disregard the remark under consideration if, indeed, they construed it as a comment on the defendant's right not to testify. See footnote 4, supra. The court refrained from elaborating further on the defendant's constitutional right to remain silent only at the specific request of his attorney. See footnote 5, supra. We do not find that the remark under consideration constituted a reference to the defendant's failure to testify, but even if it were to be so construed, we find the court's action with reference thereto to constitute error that was harmless beyond a reasonable doubt.

There is no error.

In this opinion the other judges concurred.