[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Preliminary Issues
In this administrative appeal, Dorreth Smith (complainant") CT Page 10617 claims that the Connecticut Commission on Human Rights and Opportunities ("CHRO") failed to do an adequate investigation before finding against her claim of racial discrimination in employment arising from her termination from her job at Hartford Hospital ("employer"). The court will first address several preliminary matters.
1. At oral argument, Smith's counsel, Robert Kor of Neighborhood Legal Services, announced that he had just became aware that the same law firm that is representing Hartford Hospital in this appeal, Shipman and Goodwin, is representing his employer, Neighborhood Legal Services, with regard to a complaint of employment discrimination. This court ascertained that neither Attorney Kor nor the attorney appearing in this appeal on behalf of Hartford Hospital has had any involvement in the complaint as to which Shipman and Goodwin represents Neighborhood Legal Services.
After oral argument Attorney Kor further advised this court by a letter dated September 12, 1995 that he had conferred with Dorreth Smith and had explained the facts set forth above and that Ms. Smith waives any claim of conflict and desires that Attorney Kor and Neighborhood Legal Services continue to represent her in this appeal.
Attorney Jennifer Brown Mailly, who represents Hartford Hospital in this matter, has likewise reported that her client has been advised of the facts and waives any conflict as to the representation of Shipman Goodwin.
The CHRO has taken no position. The court finds that the case may be decided without changes in representation.
2. The CHRO filed a motion to dismiss this appeal based on a claim of untimeliness but has indicated that it has abandoned that motion.
3. The court finds that the plaintiff is aggrieved by the decision of the CHRO and that an appeal is authorized by General Statutes § 46a-83a.
Procedural History
On March 16, 1992, Dorreth Smith filed a complaint with the CHRO pursuant to General Statutes § 46a-82 claiming that her employer, Hartford Hospital, discriminated against her on the basis CT Page 10618 of her race in violation of General Statutes §§ 46a-58(a), and -60(a)(1) and 42 U.S.C. § 2000e et seq when it terminated her employment on November 20, 1991.
In her complaint affidavit, the complainant alleged that she had been employed by Hartford Hospital in several positions since July 6, 1982, and that at the time of her termination she was working as a Patient Care Assistant, working under the direction of a registered nurse, Cathy Yavinsky, as an assistant in performing tasks related to care of patients. The complainant alleged that her supervisor, who is white, found fault with her performance and gave her unsatisfactory appraisals and held her to a different standard than white employees with similar performance. She further complained that Hartford Hospital had discriminatorily failed to adopt the recommendation of a hospital grievance committee that had concluded that a transfer and probation, rather than termination, was appropriate. That committee made findings to the effect that Mrs. Smith was made to feel subservient, and that "treatment of Ms. Smith by certain R.N.'s was not always fair" and that "there is a need to improve communicating skills for both the R.N.'s and PCA's involved to better understand each others duties." (Record, p. 191-92).
The two acts of discrimination noted on the CHRO intake form as to Ms. Smith's administrative complaint are "termination and failure to follow suggestions of grievance committee" (Record, page 189), reflecting the complainant's belief that Hartford Hospital adopted the recommendations of the grievance committee that favored white employees but not those that favored minority employees and that race was a factor in the decision to terminate her.
The CHRO assigned an investigator, Anita C. Zakrzewski, to the complaint. The investigator sent Hartford Hospital a letter (Record, page 49-50) identifying all the information she requested Hartford Hospital to supply for her investigation. While the investigator requested the grievance committee's files that concerned the complainant, she did not request any information that would have enabled her to compare hospital's response to the grievance committee recommendations relating to black employees in order to those relating to white employees, to determine whether either overt discrimination or disparate treatment was present, as the complainant alleged.
The investigator requested that Hartford Hospital supply her CT Page 10619 with a list of employees who had been disciplined by the white nurse who had terminated the complainant's employment. The requested information included copies of disciplinary documents, without any restriction as to what kinds of documents would be needed to be produced. (Record, p. 40) Instead of providing all documents relating to disciplinary measures taken by the same supervisor against others (a source for making comparisons to determine whether stricter standards were applied to minority supervisees), Hartford Hospital chose to provide only the annual performance appraisal forms for three such employees. The record reveals that the investigator accepted this editing of her request by the respondent and did not obtain the information actually requested as a source of comparisons in treatment of employees by a supervisor with considerable discretion.
After interviewing a number of witnesses, the CHRO issued a finding of no reasonable cause on May 31, 1994.
The complainant, by her counsel, by a letter dated June 14, 1994 requested reconsideration of the CHRO's finding of no reasonable cause. In that request, Smith's counsel stated:
 Despite my prior request to the investigator, there was no review of the frequency with which the hospital failed to follow the recommendations of the Grievance Committee in similar circumstances in the past. Since racism is often subtle, the decision of a white hospital administrator . . . to ignore a sound and balanced investigation and recommendation at the urging of a white supervisor is suspect and should have given rise to further investigation. This is particularly so when the Grievance Committee found that Ms. Smith was not always treated fairly by various R.N.'s, most of whom were white.
(Record, page 6).
The Commission, by its Capitol Region Manager, Valeria Caldwell-Gaines, responded that Ms. Gaines "reviewed the evidence gathered as a result of the investigation of this complaint and carefully reviewed the investigator's Case Summary and Finding" and as a result thereof concur[red] in the Finding and CT Page 10620 Determination by the investigator." The response indicates that no additional investigation was made on the grievance committee issue raised by the complainant and that the respondent was not asked to provide the information as to disciplinary records other than those it had chosen to supply.
Standard for Review
The CHRO and Hartford Hospital assert that the scope of this court's review is a determination whether the Commission's finding of no probable cause is supported by substantial evidence, the standard applicable in Adriani v. CHRO, 228 Conn. 545 (1994);Connecticut Light Power v. Dept. of Public Utility Control,219 Conn. 51, 57-58 (1991); Connecticut Hospital Assn., Inc. v.Commission on Hospitals and Health Care, 200 Conn. 133, 140 (1986).
The invocation of this standard reveals a misconstruction of the claim in this appeal: Dorreth Smith complains that the CHRO dismissed her complaint without completing an investigation adequate to make a fair determination of its merit in derogation of its statutory duty, imposed by General Statutes § 46a-83, to perform an adequate and appropriate investigation before issuing a finding as to whether or not reasonable cause existed to believe that a discriminatory practice had been committed.
As the Supreme Court noted in Adriani v. Commissioner on HumanReports and Opportunities, 220 Conn. 307, 327 (1991), "[t]he substantial evidence test assumes that an agency's decision is not tainted by procedural irregularities that implicate the validity of the decision itself". The court stated that where there is a question of procedural irregularities in the investigation of a complaint, the reviewing court must determine that claim rather than apply the substantial evidence test. Id., 220 Conn. 307 n. 21.
As Justice Borden noted in his concurring opinion in Adriani,220 Conn. 330-332, a CHRO investigator's finding of no reasonable cause has the same effect as an adjudication: the complainant loses her opportunity for a hearing and has no right of direct resort to the court to enforce the provisions of General Statutes §§ 46a-82-96;Sullivan v. Board of Police Commission, 196 Conn. 208, 216-17
(1985). A finding of no reasonable cause based on an inadequate or uncompleted investigation by a CHRO investigator thus has the same effect as an adjudication made without substantial evidence. As Justice Borden put it, an investigator's conclusion of no reasonable cause "effectively ends the claimant's quest for CT Page 10621 justice." Adriani, 220 Conn. 331.
Because the CHRO, unlike many administrative commissions, has statutory authority to terminate complaints by its investigative process, without an adjudicatory hearing, the adequacy of its compliance with its statutory duty to investigate complaints is subject to court review, and a finding based on inadequate investigation is subject to remand. Johnson v. CHRO: Docket No. 523582 J.D. New London (June 22, 1993, Hurley, J); Hefti v. CHRO,8 Conn. L. Rptr. 175 (Jan. 13, 1993) (Maloney, J.).
This court concludes that the scope of review appropriate to the claim at issue is that applied to appeals based on other irregularities pursuant to General Statutes § 4-183(j)(3).[1] Seee.g. Pizzola v. Plainville Planning and Zoning Commission,167 Conn. 202 (1974). Administrative rulings that are made without conforming to applicable legal constraints on the administrative body are subject to court order pursuant to General Statutes §4-183(j), Barannikova v. Greenwich, 229 Conn. 664 (1994). Accordingly, this court must determine whether the CHRO dismissed Smith's complaint on the basis of an investigation that was inadequate to fulfill its obligation under General Statutes § 46a-83. Such a determination must be made on the basis of the requirements of the statute and the scope of the complaint.
General Statutes § 46a-83 provides at subsection (b) that before making a determination concerning the existence of reasonable cause, the commissioner's executive director or his/her designee "shall" review the case file and that the file "shall" include among other things, "the [respondent's] responses to the commission's requests for information" and "the complainant's comments, if any, to the respondent's answer and information responses." The complainant alleges that the CHRO failed to discharge its investigatory duty in two respects: 1) it failed to request information to investigate her claim that Hartford Hospital's rejection of the grievance committee recommendation for a more lenient outcome was racially discriminatory and 2) it made its finding of no reasonable cause without requiring full compliance with its investigative requests to the respondent.
Discussion
General Statutes § 46a-83(b) does not impose on the CHRO an obligation to perform the most exhaustive investigation imaginable as to each complaint of discrimination it receives. The statute CT Page 10622 does, however, impose on the CHRO a minimum scope of inquiry, that is, the review of the complaint, the response, and the responses to the commissioner's requests for information as to the substance of the complaint. Such requests for information presumably are based on an investigator's informed knowledge of the sources of information or comparison that allow verification of disparate treatment of employees based on race. The Supreme Court has found that the power of the CHRO to make determinations through its investigations
 . . . is conditioned upon the commission having conducted a thorough investigation of the claim and having relied upon reliable, probative evidence in making those findings. In undertaking its investigation, the commission is obligated to pursue evidence corroborating, as well as contradicting, the plaintiff's complaint.
Adriani, 200 Conn. 319 (emphasis supplied).
Apparently recognizing that those who make racially discriminatory employment decisions are unlikely to accompany them with overly discriminatory remarks, the investigator sought information from which a comparison of treatment of minority and non-minority employees could be made. When the employer chose to limit its compliance to the annual appraisal forms of the other employees, however, the investigator did not insist on production of all of the pertinent documents but allowed the respondent not to disclose the full range of documents that the investigator had initially sought.
Obviously, employers who are charged with discrimination in employment should not be allowed to decide the scope the CHRO's investigation of such charges, and complainants seldom have access to documents that employers choose not to produce. The CHRO clearly made a determination without inspecting the documents it had deemed necessary in formulating its investigative plan, with no adequate reason for this failure.
The CHRO did not, so far as the record reveals, seek any documentation at all that would enable it to determine whether the complainant was denied the benefit of a favorable grievance committee recommendation on the basis of her race. The CHRO has decided that there was not reasonable cause for this claim without CT Page 10623 even determining whether the hospital adopted the recommendations of the grievance committee as to white employees but denied the benefit of favorable outcome to minority employees.
The brief of the CHRO suggests that the point of its investigation was to confirm the respondent's claim that the complainant was a deficient employee, not to determine whether race played a part in the decision disregard the recommendation of the grievance committee and to terminate her employment. The CHRO observes that even if its investigation were insufficient, no remand for further investigation is warranted:
 Even if they [claims of failure to investigate] were well taken, they did not prejudice plaintiff, for they are unable to overtake the mountain of unfavorable evidence which has been marshalled against her.
(CHRO Brief, pages 8-9).
The CHRO's argument suggests that it views as the point of its investigation the determination whether an employee was or was not a satisfactory employee. In fact, the CHRO is charged with investigating discrimination, not job performance. An employer who terminated minority employees for conduct for which white employees were not fired would very likely be violating General Statutes §§ 46a-58(a) and 46a-60(a)(1), and an investigation limited to confirming only the poor performance of the minority employees would fail to discharge the Commission's statutory duty to enforce the statute prohibiting discriminatory treatment. To put it another way, marginal employees as well as stellar employees have a right under General Statutes § 46a-60 not to be treated in a discriminatory manner based on their race.
The complainant in this case has demonstrated that with regard her claim that she was denied on the basis of race of the more favorable result proposed by the grievance committee was not made the subject of any actual investigation by the CHRO, which did not even look to see if white employees were more favorably treated in this respect. As to this claim, the CHRO failed to discharge its statutory duty pursuant to General Statutes §§ 46a-56(3) and 46(83(b) duty, to investigate this complaint of discrimination.
The claim based on the non-pursuit of requested documents requires a different approach than the failure to do any CT Page 10624 investigation of a portion of the complaint. The CHRO had discretion to determine what documents were reasonably adequate to determine whether the complainant was being treated differently than similarly situated peers on the basis of her race. Having designed an investigative plan in which it requested all documents relating to disciplining of other employees by the same supervisor, the CHRO failed to complete its investigation when it allowed the employer to substitute a more limited compliance than that required by the investigatory plan. This court finds that the CHRO's failure to complete the investigation it had designed as appropriate for the particular complaint constitutes a failure to comply with General Statutes § 46a-83(b), which requires the commission to review the responses to any requests for information that it issues before making a finding of no reasonable cause. The court therefore finds that the CHRO's action was made upon unlawful procedure and upon an unwarranted exercise of discretion in abandoning its own plan of investigation as to one claim and doing no investigation as to the other.
Conclusion
The complaint is remanded to the CHRO for completion of the investigation into disciplinary action taken in accordance with the original investigation request and for the performance of an investigation of the second claim, that of discrimination by the employer in failing to adopt the recommendation of the grievance committee.
Beverly J. Hodgson Judge of the Superior Court